IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **SHAWAN M. JOHNSON,** | CASE NO. 3:24 CV 44 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **ANNETTE CHAMBERS-SMITH, et al.,** | **MEMORANDUM OPINION** |
| Defendants. | **AND ORDER** |

### INTRODUCTION

*Pro se* Plaintiff Shawan M. Johnson, who is currently incarcerated at the Toledo Correctional Institution ("ToCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); B. Turner, ODRC's Director Designee; Warden Kimberly Henderson; T Clark, Warden's Designee; T. Brown, Institutional Investigator; A. Morgan, Rules Infraction Board ("RIB") Chairperson; C. Kaiser, Correctional Officer; and John Doe, "TOCI Officials 1-9." (Doc. No. 1). For the following reasons, the Court dismisses Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2).

### BACKGROUND

Plaintiff's complaint concerns disciplinary action taken following a search of his cell. Plaintiff states that Defendant Kaiser searched his cell on August 16, 2023, while Plaintiff was at lunch. (Doc. 1, at ¶¶ 15-16). Upon returning to his cell, Plaintiff found his personal belongings "tossed and trashed" throughout the cell, and he discovered some property was missing. *Id.* at ¶¶

17-18. According to the complaint, Plaintiff was served with a conduct report regarding the missing property, and he was advised that a hearing before the RIB had been scheduled. *Id.* at ¶¶ 19-20.

Plaintiff was charged with unauthorized possession or manufacture of drugs or other intoxicating substance, unauthorized possession of drug paraphernalia, misuse of authorized medication, and possession of other contraband, "including any article knowingly possessed which has been altered or for which permission has not been given." (Doc. 1-1). Defendant Kaiser, the charging official, stated he discovered a white pill, identified as olanzapine, that was not prescribed to Plaintiff, a battery, a staple, a tiny piece of paper covered in an intoxicating substance, and altered tweezers. *Id.* Officer Kaiser also discovered a wallet with paper inside it and "legal work that had multiple papers with intoxicating substances on them." *Id.* The items were taken as contraband, a control slip was completed, and the items were taken to the shift office. *Id.*

The RIB affirmed the disposition of the hearing officer and imposed the following sanctions: 30 days limited-privilege housing, 2-year visitation restriction, 30-day commissary restriction, and 3-month package restriction. (Doc. 1, at ¶ 21); (Doc. 1-2). Plaintiff appealed the decision to the warden, arguing that the confiscated contraband was not an intoxicating substance and he should be granted the opportunity for independent lab testing on the substance. (Doc. 1, at ¶ 22); (Doc. 1-3). The warden denied Plaintiff's appeal, stating that the ODRC does not permit independent lab testing, and that in administrative cases such as Plaintiff's, Investigator Schultz is considered by the ODRC an expert in the subject matter of intoxicating substances. (Doc. 1-3). The warden stated that Investigator Schultz confirmed that the contraband is indeed an intoxicating substance. *Id.* Additionally, the warden noted Nurse Weber confirmed the pill in Plaintiff's possession was medication not prescribed to Plaintiff. *Id.*

Plaintiff continued his appeal to the Chief Legal Counsel/Designee, stating three grounds for the appeal: (1) his personal phone book was not listed in any paperwork completed after the search and it remains missing; (2) the intoxicating substance on his legal mail has never been identified and no testing has been performed to confirm the substance is intoxicating; and (3) the RIB's 2-year visitation sanction is not warranted or appropriate. (Doc. 1, at ¶ 23); (Doc. 1-5). Upon appeal, Legal Services determined that there was no constitutional violation because the property was deemed to be contraband, "there were multiple intoxicating substances beyond just the supposed legal mail," and the items were properly determined to be contraband. (Doc. 1-4). Legal Services then returned the case to the RIB to "reconsider the sanction in accordance with policy," stating that there was "no requirement to change the sanction, but the RIB must determine if it fits progressive discipline." *Id.*

Plaintiff alleges his conviction for possession of "intoxicating substances" violates his Fourteenth Amendment due process rights. (Doc. 1, at ¶¶ 29-34). And in a conclusory fashion, he alleges this conviction violates his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also alleges Defendants violated his due process rights regarding the "taking" of his personal phone book, wallet, and legal papers. *Id.* at ¶¶ 35-43. Finally, Plaintiff alleges the two-year visitation restriction imposed constitutes cruel and unusual punishment in violation of the Eighth Amendment, asserting that the visitation restriction is an atypical and significant hardship. *Id.* at ¶¶ 44-47. He seeks declaratory, injunctive, and monetary relief. *Id.* at 13-14.

## STANDARD OF REVIEW

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The district court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon

3

which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but he or she must provide more than "an unadorned, the Defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998). The courts, however, are not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

## DISCUSSION

To state a claim under Section 1983, Plaintiff must allege a person acting under state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United

States. *See West v. Atkins*, 487 U.S. 42 (1988). Plaintiff must also allege "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Due Process

The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. U.S. Const. amend. XIV; *Damron v. Harris*, 2022 U.S. App. LEXIS 20963, at *6 (6th Cir.). "[T]hose [individuals] who seek to invoke its procedural protections must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Only those deprivations of constitutionally protected interests conducted without due process are subject to suit under 42 U.S.C. § 1983. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).

*Disciplinary Hearing*

Plaintiff alleges Defendants' actions concerning his disciplinary hearing violated his due process rights. It appears Plaintiff objects to the RIB's determination that the substance found on his paperwork and other items was an "intoxicating substance," claiming that the substance was not identified or properly tested. (Doc. 1, at 10). Plaintiff also claims that, despite the Director's Designee returning his case to the RIB to reconsider the sanctions, the RIB "never offered any written reconsideration of the sanctions." *Id.* at 7.

Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified

5

by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is therefore answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson*, 545 U.S. at 221. The Due Process Clause, standing alone, confers no liberty interest in freedom from state action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will "inevitably" affect the duration of an inmate's sentence, such as loss of good time credit, or inflict an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 487; *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Assignment to a super-maximum-security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement is "within the range of confinement normally expected." *Sandin*, 515 U.S. at 487. And the Sixth Circuit has repeatedly held that "confinement to administrative segregation does not present an 'atypical and significant' hardship implicating a protected liberty interest." *Murray v. Unknown Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (collecting cases) (prisoners have no liberty interest in a particular security level or prison employment).

Here, there is no indication Plaintiff was sanctioned with the loss of good time credits. Plaintiff's sanctions, rather, included 30 days of limited-privilege housing and a two-year visitation

6

restriction. A loss of privileges for a limited period of time generally does not constitute an atypical and significant hardship. *See Hill v. Stone*, 2018 U.S. Dist. LEXIS 195812, *14 (N.D. Ohio). And Plaintiff's limited-privilege housing assignment was neither excessively long nor indefinite. *See Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117 days in administrative segregation did not impose an atypical or significant hardship); *Powell v. Washington*, 720 F. App'x 220, 226 (6th Cir. 2017) (six months in administrative segregation does not constitute an "atypical and significant" hardship implicating inmate's due process rights). Furthermore, prisoners do not have a protected liberty interest in visitation. *See Bazzetta v. McGinnis*, 430 F.3d 795, 804-05 (6th Cir. 2005) (a prisoner does not have a due process right to unfettered visitation) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1998)); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification and resulting visitor limitations is not an atypical and significant hardship). Plaintiff therefore fails to state a claim for relief for a violation of due process concerning his disciplinary hearing.

Even if Plaintiff had established a liberty interest, he has not demonstrated Defendants denied him due process. The Court's ability to review prison disciplinary proceedings is limited. District courts have no authority to review a disciplinary committee's resolution of factual disputes or to make a redetermination of an inmate's innocence or guilt. *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 455. The only question for the Court to determine is whether the hearing complied with the basic requirements needed to satisfy due process. The standard is not a difficult one to meet.

To comply with the requirements of the Due Process Clause, prison officials need only provide a prisoner with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when

7

permitting him to do so will not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1972). Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. *Id.* at 569-70.

Furthermore, due process requires only that disciplinary findings be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 454-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* The disciplinary hearing officer is not required to base findings on overwhelming or irrefutable proof of guilt. Even where the evidence is contradictory or partially exculpatory, the RIB may base a finding of guilt on only "some evidence" that indicates the prisoner is guilty. *Id.* at 457.

Here, although Plaintiff attempts to characterize his claim as a denial of due process, he simply attacks the result of the disciplinary hearing. Plaintiff does not allege he did not receive notice of the charges, an opportunity to present a defense, or a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action. Nor does he allege the absence of "some evidence" supporting the RIB's finding of guilt. Rather, Plaintiff disputes the RIB's resolution of factual issues – that the substance found on his paperwork was an "intoxicating substance." The Court has no authority to review the RIB's decision. Additionally, to the extent Plaintiff claims the RIB denied him due process when the Board failed to provide written reconsideration of the sanctions, his argument is unavailing. There is no indication in the record that the RIB was required to provide a written reconsideration. There is also no indication that

Plaintiff's sanctions were not reconsidered, as there was no requirement that the RIB change Plaintiff's sanctions. *See* Doc. 1-4.

Accordingly, Plaintiff fails to state a due process claim concerning his disciplinary hearing.

*Personal Property*

Plaintiff alleges his personal property was taken during the correctional officer's search of his cell, without "any of the required paperwork or procedures," and the items were never returned. (Doc. 1, at 11). In his complaint, he seeks the return of his property. Section 1983 was not meant to supply an exclusive federal remedy for every alleged wrong committed by state officials. Rather, the statute is a remedy for only those wrongs that offend the Constitution. Therefore, to the extent this claim could arise under Section 1983, the Court construes the claim as one asserting a deprivation of property without procedural due process. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).

To state a procedural due process claim based on alleged unauthorized acts of the defendants, Plaintiff must plead and prove that state remedies for redressing the wrong are inadequate. *Vicory*, 721 F.2d at 1064. Plaintiff appears to allege that a state tort action is not available to him because he does not seek a monetary award, rather, he seeks the return of his property. *See* Doc. 1, at 12. Plaintiff, however, fails to address why a state action in replevin would not redress his injury. *See Decastro v. Wagner*, 2023 U.S. Dist. LEXIS 135625, *7-8 (S.D. Ohio) (procedural due process claim fails where a replevin action was available to provide for the return of his property); *Geer v. Ginocchio*, 2017 U.S. Dist. LEXIS 86942, *10 (S.D. Ohio) (finding plaintiff had not alleged facts showing that state post-deprivation remedies were inadequate or unavailable to him and recognizing that a "civil action for replevin is one method to seek the return of property wrongfully withheld by the state or other public entity" in Ohio); *Lumbus v. Weisbar*,

9

2024 U.S. Dist. LEXIS 74643, *48 (S.D. Ohio) (while plaintiff alleged post-deprivation remedy of a prison grievance procedure was potentially inadequate, plaintiff's failure to address any other state remedies available to him was fatal to his procedural due process claim for the purported taking of his personal property during a search of his cell); *Rivers v. Turner*, 2015 U.S. Dist. LEXIS 122933, *14 (N.D. Ohio) (where plaintiff "conflate[d] the Court of Claims' lack of subject-matter jurisdiction over claims against privately owned prisons … with a total absence of state-law remedies" and failed to address why a state tort remedy for conversion would not redress his injury, plaintiff failed to state a procedural due process claim). Because adequate state remedies exist, Plaintiff fails to state a claim for deprivation of property without due process.

Cruel and Unusual Punishment

In Count One, Plaintiff alleges in a conclusory fashion that "Defendants" violated his Eighth Amendment right to be free from cruel and unusual punishment regarding the RIB's conviction and sentence for possession of an "intoxicating substance" on various items recovered during the search of Plaintiff's cell. (Doc. 1, at 9). In an equally conclusory fashion, Plaintiff alleges in Count Three that Defendants violated his Eighth Amendment rights by imposing a two-year visitation restriction, stating that "there was no conduct whatsoever related to visiting" and this sanction is "unduly cruel and unusual given that [visitation] only recently returned to normal at ToCI" after COVID. *Id.* at 12-13.

To the extent Plaintiff alleges this claim against Defendants in their official capacities, he fails to state a cognizable claim. The Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Grinter*, 532 F.3d at 572. As Defendants are employed by the

10

ODRC, or the State of Ohio, and thus state employees, Plaintiff's official capacity claims against these defendants are construed as claims against the State of Ohio. *See Peace v. Mohr*, 2013 U.S. Dist. LEXIS 190092, at *12 (N.D. Ohio). Sovereign immunity bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court. *See Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The State of Ohio has not waived its sovereign immunity in federal court. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Furthermore, it is well established that the federal statute invoked in this case, 42 U.S.C. § 1983, does not abrogate immunity. *See Will*, 491 U.S. at 66-67; *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Thus, Plaintiff's official capacity claims against Defendants are unavailing. Moreover, the Supreme Court has held that neither a state nor its officials acting in their official capacities are "persons" under Section 1983. *See Will*, 491 U.S. at 71. Plaintiff's official capacity claims against Defendants for an Eighth Amendment violation therefore fail to state a claim upon which relief may be granted.

To the extent Plaintiff alleges an Eighth Amendment claim against Defendants in their individual capacities, he fails to state a claim. To hold an individual defendant liable under Section 1983, a plaintiff must allege "personal involvement" in the alleged unconstitutional conduct. *See Grinter*, 532 F.3d at 575. It is a basic pleading requirement that a plaintiff must attribute specific factual allegations to particular defendants. *Twombly*, 550 U.S. at 555 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Moreover, it is well established that liability may not be imposed under Section 1983 solely on the basis of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). Rather, Section 1983 liability must be premised on a defendant's own, "active unconstitutional behavior" and not a mere

11

failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d. 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability").

Here, Plaintiff generically alleges that "Defendants" violated his Eighth Amendment rights. He fails to attribute specific factual allegations to particular defendants. Although the Court must liberally construe a *pro se* complaint, the Court is not required to construct claims on Plaintiff's behalf, and conclusory allegations and legal conclusions "masquerading as factual allegations" are insufficient to state a plausible claim. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Because Plaintiff fails to specify which defendants allegedly violated his Eighth Amendment rights, Plaintiff's claims are subject to dismissal on that basis alone. *See Frazier*, 41 F. App'x at 764 (affirming dismissal of Section 1983 claim under 28 U.S.C. §§ 1915(e) and 1915A and 42 U.S.C. § 1997e(c) for failure to state a claim against defendants in their individual capacity where plaintiff does not allege which of the named defendants were personally responsible for each claimed rights violation).

Moreover, even if Plaintiff's Eighth Amendment claim can be construed as alleged against a specific defendant or defendants, he fails to allege a plausible claim for relief. The Eighth Amendment limits the power of states to punish individuals convicted of crimes. The punishment may not be "barbarous," "involve the unnecessary and wanton infliction of pain," or contravene "evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981) (citations omitted); *Walker v. Mintzes*, 771 F.2d 920, 926 (6th Cir. 1985) (the basic needs of life are adequate food, clothing, shelter, sanitation, medical care, and

12

personal safety) (citations omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Here, Plaintiff merely alleges that Defendants violated his Eighth Amendment rights "in regards to the convictions and sentences" for possession of an intoxicating substance. He does not allege (nor can the Court infer) he was deprived of the minimal civilized measures of life's necessities. Furthermore, to the extent he claims Defendants violated his Eighth Amendment rights by terminating his visitation privileges for two years, Plaintiff's argument is unavailing. Visitation with a particular person does not constitute a basic necessity and therefore deprivation of that visitation does not violate the Eighth Amendment. *See Post v. Mohr*, 2012 U.S. Dist. LEXIS 2944, *16 (N.D. Ohio) (citing *Kentucky Dep't of Corr.*, 490 U.S. at 461); *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004); *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1099 (S.D. Cal. 1999) ("[D]enial of family visitation privileges does not constitute cruel and unusual punishment.")).

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that this action be, and the same hereby is, DISMISSED in its entirety under 28 U.S.C. § 1915(e)(2); and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: June 7, 2024